UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
IN ADMIRALTY

CLAY COUNTY PORT, INC.,

    Plaintiff,

v.                                        CASE NO. 3:23-cv-292-TJC-JBT

M/V ESCAPADE, her engines, tackle,
apparel, etc., *in rem*,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on Plaintiff's Motion for Entry of Final Default Judgment Against M/V Escapade, In Rem ("Motion") (Doc. 24). In its Verified Complaint In Rem ("Complaint"), Plaintiff alleges breach of a maritime contract for failure to pay dockage fees. (Doc. 1.) Plaintiff now seeks to recover on an alleged maritime lien against the M/V Escapade ("Escapade") in the principal amount of $181,289.11 through March 26, 2023, the day before the arrest of the vessel, plus costs and continuing *custodia legis* expenses through the date of sale and delivery to the successful purchaser. (Doc. 24 at 3–4.) Plaintiff moved for the entry of default and a default was subsequently entered on May 19, 2023. (Docs. 22 & 23.) No other interested party has appeared despite being given adequate

notice and time to do so. Upon consideration, it is therefore respectfully **RECOMMENDED** that the Motion be **GRANTED**.

## I. Background

On December 19, 2016, Plaintiff and the owner of the Escapade, Trade Winds Cruise Lines, LLC ("Trade Winds"), entered into a Docking License Agreement ("Agreement") (Doc. 1-2). Pursuant to the Agreement, Plaintiff provided dockage for the Escapade at a rate of $109.20 per day, and on the credit of the vessel. (Doc. 1 at 2, 3; Doc. 1-2 at 1, 2.)

Trade Winds began docking the Escapade at Plaintiff's facility in Green Cove Springs, Clay County, Florida, in December 2016. Plaintiff paid the dockage fees pursuant to the agreement up to and including May 4, 2020. (Doc. 1 at 2–3.) However, Trade Winds ceased making payments after that, causing it to default on the Agreement. (*Id.*) The Escapade has remained at Plaintiff's facility from December 2016 to date. (*Id.* at 2; *see* Doc. 24.)

In response to Trade Winds' default on the Agreement, on or about August 19, 2020, August 31, 2021, and March 13, 2023, Plaintiff sent notices of the default to Trade Winds. (Doc. 1 at 3; Doc. 1-4.) Plaintiff subsequently filed this action on March 15, 2023. (Doc. 1.) Plaintiff alleges that, by providing dockage services for the Escapade, it obtained a maritime lien against the vessel pursuant to 46 U.S.C. § 31301, *et seq.* and the general maritime law of the United States. (*Id.* at 3.) In light of Trade Winds' breach of the Agreement, Plaintiff seeks to foreclose on its maritime lien and reduce it to judgment. (*See* Doc. 24.) The undersigned

recommends that the Court grant the Motion and provide Plaintiff with this requested relief.

## II.     Applicable Law

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  First, when the defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default against the defendant.  *See* Fed. R. Civ. P. 55(a).  Second, and in general, after receiving the clerk's default, the Court, or in some instances the clerk, may enter a default judgment against the defendant for not appearing.  *See* Fed. R. Civ. P. 55(b).

The law is well settled that through his or her default, a defendant "admit[s] [a] plaintiff's well-pleaded allegations of fact . . . ."  *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Patray v. Nw. Publ'g., Inc.*, 831 F. Supp. 865, 869 (S.D. Ga. 1996).  However, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206; *see also Danning v. Lavine*, 572 F.2d 1386, 1386 (9th Cir. 1978) (stating that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment").  A sufficient basis must exist in the pleadings for a default judgment to be entered.  *See Nishimatsu*, 515 F.2d at 1206.  Accordingly, before entering a default judgment the Court must ensure it has jurisdiction over the claims and the complaint adequately states a claim for which relief may be granted.

*Id.*; *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002).

Federal Rule of Civil Procedure 8 provides the applicable pleading standard, and requires that a complaint include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief. *See* Fed. R. Civ. P. 8(a). A complaint meets the requirements of Rule 8 if, in light of the nature of the action, the complaint provides factual allegations, which are assumed to be true, sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") However, a "plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555.

Moreover, Supplemental Rule C(2) of the Federal Rules of Civil Procedure sets forth additional requirements for a complaint in an action *in rem*: "In an action in rem the complaint must: (a) be verified; (b) describe with reasonable particularity the property that is the subject of the action; and (c) state that the property is within the district or will be within the district while the action is pending." Fed. R. Civ. P Supp. R. C(2).

Finally, "a judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam); *see also SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005).  Further, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). *See Campbell v. Bennett*, 47 F.4th 1362 (11th Cir. 2022).

### III. Analysis

#### A. Subject Matter Jurisdiction

Plaintiff sues a vessel *in rem* to foreclose upon a maritime lien and obtain judgment.  Such actions fall within this Court's admiralty jurisdiction.  *See* 28 U.S.C. § 1333; 46 U.S.C. § 31326.

#### B. Claim Stated

##### 1. Maritime Lien

As the Eleventh Circuit has stated, "[a] maritime lien may arise out of the breach of a maritime contract." *Bd. of Comm'rs of Orleans Levee Dist. v. M/V Belle of Orleans,* 535 F.3d 1299, 1314 (11th Cir. 2008), *abrogated on other grounds by Lozman v. City of Riviera Beach,* 568 U.S. 115, 119–20 (2013).  "A contract that provides a vessel with necessaries is commonly considered a maritime contract giving rise to a maritime lien." *Id.* (internal quotation marks omitted).

Further, the Eleventh Circuit set out the requirements for obtaining a maritime lien in *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242 (11th Cir. 1999). The Eleventh Circuit stated:

> The test for determining who is entitled to a maritime lien must come from a plain reading of the statute itself:
>
> (a)   Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
>
> (1)   has a maritime lien on the vessel;
>
> (2)   may bring a civil action in rem to enforce the lien; and
>
> (3)   is not required to allege or prove in the action that credit was given to the vessel.
>
> 46 U.S.C. § 31342. Therefore, to obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent.

*Id.* at 1244.

Here, Plaintiff alleges that it contracted with Trade Winds to provide necessaries to the Escapade in the form of dockage. (Doc. 1 at 2–3); *see City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259, 1270 (11th Cir. 2011) ("We have held that dockage . . . constitutes 'necessaries' for purposes of maritime law."), *rev'd on other grounds by Lozman*, 568 U.S. at 119–20 (2013). Therefore, Plaintiff has sufficiently alleged the existence of an underlying maritime contract. Plaintiff also alleges that Trade Winds breached the underlying maritime contract by defaulting

6

on payments. (Doc. 1 at 3.) Further, Plaintiff alleges that the necessaries were provided on the order of the owner or agent of the vessel. (*Id.* at 2.) Therefore, Plaintiff has sufficiently alleged that it has a maritime lien on the Escapade.

### 2. *In Rem* Action

Further, the additional pleading requirements for *in rem* actions contained in Supplemental Rule C(2) are also met. The Complaint is verified (*id.* at 6), it describes with reasonable particularity the property that is the subject of the action (*id.* at 2), and it states that the property is within this district while the action is pending. (*Id.*) Fed. R. Civ. P Supp. R. C(2).

### C. Damages

Finally, the undersigned recommends that Plaintiff has provided sufficient proof of damages in the form of the Complaint and the affidavits of Ted McGowan, Plaintiff's Executive Director, and Richard K. Jones, its attorney. (Docs. 1, 25, 26, & 27.) Further, the amount of Plaintiff's requested damages does not exceed the amount demanded in the Complaint, and a hearing on damages is not necessary because the amount claimed is a liquidated sum.

Pursuant to the Agreement, Trade Winds agreed to pay Plaintiff $109.20 per day for dockage of the Escapade plus Florida sales tax and a late fee of 10% for any late payments. (Doc. 1 at 2; Doc. 1-2 at 1.) In the Complaint, Plaintiff alleges that Trade Winds owed it $178,236.97 for the unpaid dockage fee, sales tax, and late fees from December 2016 through February 28, 2023. (Doc. 1 at 3; Doc. 1-3.) Further, Plaintiff provides evidence that the unpaid dockage fee, sales tax, and

late fees through March 26, 2023, the day before the Escapade was arrested, totaled $181,289.11.  (Doc. 24 at 2–3; Doc. 25.)

Once the Escapade was arrested, Plaintiff began serving as the substitute custodian of the vessel, providing for security, wharfage, and safekeeping thereof at a daily rate of $217.39 (consisting of the dockage fee of $109.20, Florida sales tax of $8.19, and a substitute custodian fee of $100.00).  (Doc. 24 at 2–3; Doc. 27 at 2.)   Plaintiff represents that this rate is substantially less than what the U.S. Marshal would have charged to be substitute custodian of the vessel.  (Doc. 24 at 3.)  Further, Plaintiff avers that the substitute custodian fee of $100.00 per day compares favorably to a fee of $85.87 per day it received in 2013 from this Court for acting as a substitute custodian.  (Doc. 27 at 2.)  Thus, the undersigned recommends that this daily rate is appropriate.

Therefore, the total amount due for Plaintiff's substitute custodian fees as of June 2, 2023, was $14,782.52.  (Doc. 24 at 3–4; Doc. 27 at 2.)  Plaintiff will continue to charge a daily substitute custodian fee through the date of sale of the vessel and delivery to the successful purchaser.  (Doc. 27 at 2.)  Therefore, up to June 2, 2023, the total amount due to Plaintiff for fees was $196,071.63.  (Doc. 24 at 4.)

The undersigned further recommends that Plaintiff's incurred costs of $780.03 are reasonable and recoverable pursuant to the Agreement.  (Doc. 1-2 at 2.)  Trade Winds agreed that, in the event of default, Plaintiff would be entitled to recover "all costs and expenses incurred."  (*Id.*)  Plaintiff provides evidence that it

8

incurred $780.03 in costs because of the default. (Doc. 24 at 3; Doc. 26.) Therefore, the undersigned recommends that Plaintiff is entitled to the requested amount of $196,851.66 up to June 2, 2023 ($196,071.63 in fees + $780.03 in costs), and $217.39 per day from June 3, 2023, through the date of sale of the vessel and delivery to the successful purchaser.

**IV.   Conclusion**

In light of the foregoing, the undersigned recommends that default judgment be entered in favor of Plaintiff and against Defendant.

Accordingly, it is respectfully **RECOMMENDED**:

1.   The Motion (**Doc. 24**) be **GRANTED**.

2.   The Clerk be directed to enter judgment for Clay County Port, Inc., and against the M/V Escapade in the following amounts:

> (a) $181,289.11 for the unpaid dockage fee, sales tax, and late fees up through March 26, 2023;
>
> (b) $14,782.52 for substitute custodian services from March 27, 2023, through June 2, 2023;
>
> (c) $217.39 per day for substitute custodian services from June 3, 2023, through the date of sale of the vessel and delivery to the successful purchaser; and
>
> (d) $780.03 for costs relating to the filing fee and the arrest of the M/V Escapade.

### Notice to the Parties

"Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on June 23, 2023.

*[signature]*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
Chief United States District Judge

Counsel of Record

Defendant
c/o Trade Winds Cruise Lines, LLC
Teresa Pasternack
1449 West Wilson Ave.
Chicago, IL 60640